## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JOHNNIE R. TOLES,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-13-273-D** |
| | ) | |
| **HASKELL HIGGINS,**[1] | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION

Petitioner, appearing pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Doc. 1. United States District Judge Timothy D. DeGiusti referred the matter for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Doc. 4. Respondent filed a response, Doc. 12, with the jury-trial transcripts (TR), and the original record (OR), and Petitioner did not reply. For the reasons set forth below, it is recommended that the Petition be denied.

## BACKGROUND

In Pottawatomie County, Oklahoma, in Case No. CF-2010-567, the State charged Petitioner with first degree manslaughter, with the underlying misdemeanor crime of driving a motor vehicle while under the combined influence of alcohol and intoxicating substances. OR at 1.[2] The jury convicted Petitioner and the trial court sentenced him to ten years' imprisonment.

---

[1]Although the habeas petition form required Petitioner to list Oklahoma's Attorney General as a respondent, Doc. 1, at 1, the only proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242. In this case, the only proper respondent is Haskell Higgins, Petitioner's Warden at the Jim E. Hamilton Correctional Center.

[2]Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citation to the state court records will refer to the original pagination.

*Id.* at 251.  Petitioner appealed, and the Oklahoma Court of Criminal Appeals (OCCA) affirmed his conviction.  Doc. 12, Ex. 3, at 1-7.

## PETITIONER'S CLAIMS

Petitioner's Petition is quite vague, listing general allegations such as "[i]nsufficient evidence," "prosecutorial misconduct," "Due Process" and "violation of Constitutional right."[3]  Doc. 1, at 6, 8.  However, Petitioner says he exhausted each claim in his direct appeal and he specifically directs the Court to his attached direct appeal brief.  *Id.* at 10.  In an abundance of caution, the undersigned has construed Petitioner's Petition as raising the same claims he raised before the OCCA.  With that construction, Petitioner alleges:  (1) Ground One – the evidence was insufficient to support his conviction; (2) Ground Two – the trial court issued fundamentally defective instructions; (3) Ground Three – the trial court failed to follow proper procedures when addressing jury questions; (4) Ground Four – prosecutorial misconduct fatally infected his trial; (5) Ground Five – he had an inadequate record for appeal, in part based on his attorney's shortcoming; (6) Ground Six – his sentence is constitutionally excessive; and (7) Ground Seven – an accumulation of error.  *Id.*, Ex. 1, at 17-53.

## RELEVANT BACKGROUND FACTS

On July 8, 2010, Mr. and Mrs. Williams hydroplaned on Highway 9A and their truck entered a steep ditch.  TR Vol. III at 285-88, 323-24.  Jeff Haynes (Mr. Williams' step-brother) arrived shortly thereafter to try and pull the truck free.  *Id.* at 289, 325.  Mr. Haynes noticed a car driving towards them, and Mr. Williams walked towards the car waving his arms "up and down to get [its] attention."  *Id.* at 327.  Petitioner, driving south on Highway 9A and not slowing, struck and killed Mr. Haynes.  *Id.* at 293-96, 311-27.  A blood test revealed Petitioner had a

---

[3]Unless otherwise indicated, all quotations are reprinted verbatim.

"blood-alcohol content" of ".08" and was "presumptive[ly] positive" for "marijuana" and "cocaine." TR Vol. IV at 579.

## STANDARD OF REVIEW FOR HABEAS RELIEF

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013). A petitioner is entitled to federal habeas relief only if the merits-based adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d). "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.'" *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation omitted). This standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03.

This Court first determines "whether the petitioner's claim is based on clearly established federal law, focusing exclusively on Supreme Court decisions." *Hanson v. Sherrod*, 797 F.3d 810, 824 (10th Cir. 2015); *see also Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012). Clearly established federal law consists of Supreme Court holdings in cases where the facts are similar to the facts in the petitioner's case. *See House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of clearly established federal law. *See Owens*, 792 F.3d at 1242.

"A state court's decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.'" *Id.* (citations omitted). Notably, "'[i]t is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the Supreme Court decision itself.'" *Id.* (citation omitted).

The "'unreasonable application' prong requires [the petitioner to prove] that the state court 'identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the prisoner's case.'" *Id.* (citations and internal brackets omitted). On this point, "the relevant inquiry is not whether the state court's application of federal law was *incorrect*, but whether it was 'objectively unreasonable.'" *Id.* (citations omitted, emphasis in original). So, to qualify for habeas relief on this prong, a petitioner must show "'there was no reasonable basis' for the state court's determination." *Id.* at 1242-43 (citation omitted). "In other words, 'so long as fairminded jurists could disagree on the correctness of the state court's decision,' habeas relief is unavailable." *Id.* at 1243 (citation omitted); *see also Harrington*, 562 U.S. at 103 ("As a condition for obtaining federal habeas relief, . . . a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The AEDPA deference is equally applicable when the state appellate court finds a constitutional error harmless. *See Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015). That is, on direct appeal, "'before a federal constitutional error can be held harmless, the court must be able

to declare a belief that it was harmless beyond a reasonable doubt.'" *Id.* (*citing Chapman v. California*, 386 U.S. 18, 24 (1967)). However, "in a collateral review of a state court's criminal judgment," this Court applies the "'more forgiving standard' first articulated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993)." *Lockett v. Trammel*, 711 F.3d 1218, 1232 (10th Cir. 2013) (citation omitted). Under *Brecht*, "an error is deemed harmless unless it had a substantial and injurious effect or influence in determining the jury's verdict." *Id.* (citations and internal quotations omitted). "A substantial and injurious effect exists if a court finds itself in grave doubt about the effect of the error on the jury's . . . decision." *Id.* (citations, internal quotations, and internal brackets omitted); *see also Marshall v. Rudek*, 570 F. App'x 823, 826 (10th Cir. 2014). Because the *Brecht* analysis is more forgiving, it "subsumes the limitations imposed by the AEDPA." *Davis*, 135 S. Ct. at 2199. In other words, to succeed on habeas review, a petitioner must show "he was actually prejudiced," "a standard that he necessarily cannot satisfy if a fairminded jurist could agree with the [state appellate court's] decision" that the constitutional error "met the *Chapman* standard of harmlessness." *Id.*

## ANALYSIS

## I.     Ground one – Petitioner's Claim the Evidence was Insufficient to Support His Conviction

In his first allegation, Petitioner claims the evidence was insufficient to support his conviction. Doc. 1, Ex. 1, at 17-27. First, Petitioner alleges insufficient evidence he was under the influence of alcohol *and* an intoxicating substance. *Id.* at 18-24. For this claim, Petitioner complains the State did not test his blood to *confirm* the presence of marijuana and cocaine, and argues the "presumptive" test results were unfairly prejudicial. *Id.* at 20-21, 24. The undersigned notes that Petitioner's argument, though raised as a challenge to the sufficiency of

the evidence, also challenges the trial court's evidentiary ruling. Second, Petitioner argues insufficient evidence he was the "proximate cause" of Mr. Haynes' death. *Id.* at 24-26.

The OCCA rejected Petitioner's claim on direct appeal, holding:

> We find in Proposition I that, taking the evidence in the light most favorable to the State, any rational trier of fact could find beyond a reasonable doubt that [Petitioner] was intoxicated and caused Haynes' death while driving under the combined influence of alcohol and other intoxicants. We will not interfere with a verdict supported by the evidence, even where evidence conflicts. We credit all inferences the jury could reasonably draw from the record as a whole. We first find that presumptive tests may be relevant if they make a material fact of consequence to the determination of the case more or less likely. For scientific or specialized knowledge such as presumptive tests, we look to see whether the procedure used is reliable enough for its stated purpose and whether the jury was misled regarding the conclusions to draw from the test. The presumptive blood results here were relevant to the issue of whether [Petitioner] was under the influence of other intoxicants, as well as of alcohol, and jurors could use those results in determining whether other intoxicants were present. We further find that, to sustain a conviction for misdemeanor manslaughter, there must be a causal connection between the misdemeanor and the homicide. This causal connection is satisfied if the defendant's conduct was a substantial factor in the victim's death, even where other factors may have contributed to the death. Comparative and contributory negligence are not defenses to a criminal charge. Uncontroverted evidence showed [Petitioner] drove the car that hit and killed Haynes. [Petitioner's] blood alcohol level was .08, and a presumptive blood test was positive for marijuana and [cocaine].

Doc. 12, Ex. 3, at 2-3 (citations omitted).

The undersigned finds the OCCA's holding to be a reasonable application of clearly established federal law.

### A.     Petitioner's Claim Involving the Trial Court's Evidentiary Ruling

Because it is central to Petitioner's insufficiency argument, the undersigned first examines the OCCA's holding regarding the trial court's evidentiary ruling allowing the "presumptive" drug test into evidence. Relying in part on *Crider v. State*, No. F-99-1422 (Okla. Crim. App. Oct. 11, 2001), Petitioner argued on direct appeal that the trial court abused its discretion in admitting the evidence because it was unfairly prejudicial. Doc. 1, Ex. 1, at 22. In

6

*Crider*, the OCCA decided whether the trial court's admission of a presumptive luminol test "infected" the trial and "deprived [the defendant] of a fair trial." Doc. 12, Ex. 2, Att. A, at 1, 19-22. To that end, the undersigned construes Petitioner's direct appeal brief as having raised a federal due process claim and presumes the OCCA considered and denied the federal claim on its merits. *See supra* at 3.

### 1. Clearly Established Law

The question for this Court is not whether the trial court improperly admitted the evidence under Oklahoma law. That is, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, under clearly established law, Petitioner must show the evidence was so grossly prejudicial it fatally infected the trial and denied him fundamental fairness. *See Hooks*, 689 F.3d at 1180 ("Thus, Mr. Hooks is entitled to habeas relief only if an alleged state-law error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." (internal quotations and citation omitted)); *see also Ochoa v. Workman*, 669 F.3d 1130, 1144 (10th Cir. 2012) (holding the question of whether evidence renders a trial fundamentally unfair is made "without regard to whether the evidence was properly admitted pursuant to state law").

### 2. Analysis

Mr. Stillwell, a forensic toxicologist at the Oklahoma Bureau of Investigation, testified Petitioner's blood sample was "presumptive[ly] positive" for marijuana and cocaine, TR Vol. IV at 579, but he admitted he had not tested Petitioner's blood to *confirm* the findings. *Id.* at 580.

However, to be relevant under Oklahoma law, evidence need not be refutably conclusive of anything; it merely needs to have "any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." Okla. Stat. tit. 12, § 2401. Thus, as the OCCA held, Petitioner's blood test was relevant to show it was more probable Petitioner had intoxicants in his blood at the time of the accident.

More importantly, Mr. Stillwell admitted he had not confirmed the presence of intoxicants and Petitioner's attorney extensively cross-examined him on that issue. TR Vol. IV at 595-600. In fact, the defense counsel even eliciting the toxicologist's personal opinion that the "burden hasn't been met without the confirmation of a substance." *Id.* at 599. So, the jury was well aware that the test included only a "presumptive" positive and did not confirm the existence of intoxicants. Under the circumstances, the OCCA reasonably held the evidence did not render Petitioner's trial fundamentally unfair. *See, e.g., Dodd v. Workman*, No. CIV-06-140-D, 2011 WL 3299101, at *59-61 (W.D. Okla. Aug. 2, 2011) (unpublished order) (holding the OCCA reasonably applied federal law in finding the admission of a presumptively positive luminol test did not render petitioner's trial fundamentally unfair where the expert "was subjected to thorough cross-examination" and it was clear to the jury that the test "was only a presumptive test and could not conclusively indicate the presence of blood"), *overruled in part on other grounds*, *Dodd v. Trammell*, 753 F.3d 971 (10th Cir. 2013).

**B.    Petitioner's Claim Involving the Insufficiency of the Evidence**

As noted above, Petitioner's insufficiency argument is twofold. First, Petitioner suggests that because the blood test did not *confirm* the presence of marijuana and cocaine, the State lacked sufficient evidence to prove beyond a reasonable doubt he was under the influence of alcohol *and* an intoxicating substance. Doc. 1, Ex. 1, at 18-24. Second, Petitioner argues

insufficient evidence that he was the "proximate cause" of Mr. Haynes' death. *Id.* at 24-26. The undersigned finds the OCCA reasonably rejected both claims.

### 1. Clearly Established Law Involving Sufficiency of the Evidence

The United States Supreme Court clearly established the constitutional right to sufficient evidence of guilt in *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see Lott v. Trammell*, 705 F.3d 1167, 1219 (10th Cir. 2013) (agreeing *Jackson* provided "the clearly established law applicable to [an insufficient evidence] claim"). Under this decision, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). *Jackson*'s standard for evidence sufficiency "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id*. at 324 n.16.

### 2. The Elements of First Degree Manslaughter

To convict Petitioner of first degree manslaughter, the State had to prove, in relevant part, Petitioner caused Mr. Haynes' death "while engaged in the commission of a misdemeanor." Okla. Stat. tit. 21, § 711(1); *see also* Okla. Unif. Jury Instrs. (criminal) 4-94. To prove the underlying misdemeanor − driving a motor vehicle while under the combined influence of alcohol and intoxicating substances – the State had to prove Petitioner drove a motor vehicle "under the combined influence of alcohol and any other intoxicating substance which may render such person incapable of safely driving or operating a motor vehicle." Okla. Stat. tit. 47, § 11-902(A)(5); Okla. Unif. Jury Instrs. (criminal) 6-20.

### 3.     Analysis

Petitioner does not dispute that he was driving the car that hit Mr. Haynes, or that Mr. Haynes died.  Petitioner also does not dispute he had a blood alcohol level of .08.  Instead, for his first argument, Petitioner challenges only the evidence he was under the *combined* influence of alcohol and another intoxicating substance.  But as addressed above, the trial court properly admitted evidence that Petitioner's blood had tested "presumptive[ly] positive" for cocaine and marijuana.  *See supra* at 7-8.  And, the OCCA held that when reviewing this evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Petitioner was under the influence of both intoxicants and alcohol.  This was a reasonable *Jackson* application and the undersigned recommends the Court deny habeas relief on this ground.

The undersigned recommends the same for Petitioner's claim there was insufficient evidence he was the proximate cause of Mr. Haynes' death.  According to Petitioner, other factors contributed to Mr. Haynes' death, including Mrs. Williams' driving the truck into the ditch, and Mr. Haynes not paying more attention to the road as he tried to pull the truck free.  Doc. 1, Ex. 1, at 24-25.  But under Oklahoma law, the "causal connection" between the misdemeanor and the death is satisfied if "the defendant's conduct was a substantial factor in bringing about the victim's death."  *State v. Ceasar*, 237 P.3d 792, 794-95 (Okla. Crim. App. 2010).  Further, "[t]hat other factors may have contributed to the death does not necessarily absolve the defendant of criminal liability for homicide in the commission of a misdemeanor." *Id.*  The evidence at trial indicated Petitioner did not slow his vehicle as Mr. Williams waved his arms to get his attention, and he struck Mr. Haynes, causing his death.  *See supra* at 2.  As the OCCA held, any rational trier of fact could have found beyond a reasonable doubt that

Petitioner's driving while under the influence of alcohol and intoxicants was a substantial factor in Mr. Haynes' death. Therefore, the undersigned finds the OCCA reasonably applied *Jackson* in rejecting Petitioner's claim on direct appeal and habeas relief is not warranted.

## II. Ground Two – Petitioner's Claim the Trial Court Gave the Jury Fundamentally Defective Instructions

Petitioner alleges the trial court gave two separate instructions which were each so improper as to violate the Due Process Clause. Doc. 1, Ex. 1, at 27-26. In the first, the trial court instructed the jury that Oklahoma law permits an officer to collect a driver's blood following any accident involving another's death or great bodily injury. *Id.* at 32.[4] In the second, the trial court gave supplemental instructions regarding whether Petitioner had to have a combination of alcohol and intoxicants in his system. *Id.* at 34-36.

On direct appeal, the OCCA held:

> We find in Proposition II that the trial court did not incorrectly instruct the jury. The trial court must instruct on all applicable law, with or without a request from either party, and instructions are sufficient when, read together, they state the applicable law. [Petitioner's] cross-examination of Trooper Wright elicited confusing and misleading testimony regarding probable cause for an implied consent to blood draw. There was no plain error in the trial court's *sua sponte* instruction to jurors clarifying the law on that issue. Furthermore, the trial court did not abuse its discretion in giving Supplemental Instruction No. 1. Reviewing the instructions as a whole, along with the jury's question, this instruction was not misleading. When read as a whole, these instructions stated the applicable law.

Doc. 12, Ex. 3, at 3-4 (citations omitted).

---

[4]In a one-sentence statement, Petitioner alleges his attorney failed to object to this instruction. Doc. 1, Ex. 1, at 33. Although Petitioner cites *Strickland v. Washington*, 466 U.S. 668 (1984), he does not otherwise develop an ineffective assistance of counsel argument. *Id.* The OCCA did not address the statement on direct appeal, and the undersigned likewise finds it does not warrant review. *See Moore v. Gibson*, 195 F.3d 1152, 1180 n.17 (10th Cir. 1999) ("We do not consider unsupported and undeveloped issues."). However, should the Court disagree, the undersigned notes the instruction accurately described Oklahoma law and did not render Petitioner's trial fundamentally unfair. *See infra* at 12-13. Under such circumstances, there is not a reasonable probability that had trial counsel objected, the trial results would have been any different. *See id.* at 24.

The undersigned recommends the Court deny habeas relief on Ground Two, as the OCCA's decision was reasonable.[5]

## A.     Clearly established law

"Habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense." *Brinlee v. Crisp*, 608 F.2d 839, 854 (10th Cir. 1979); *see also Locust v. Parker*, 413 F. App'x 51, 54 (10th Cir. 2011).

## B.     Analysis

### 1.     Petitioner's Challenge to the Probable Cause Instruction

Petitioner first challenges the trial court's sua sponte instruction to the jury clarifying Oklahoma's law on probable cause for a blood draw.  On direct and cross-examination, the attorneys asked Trooper Robert Wright numerous questions touching on the legality of Petitioner's blood draw.  TR Vol. IV at 428-29, 487-94.  At one point the witness answered:  "If you do not have any probable cause, then the blood would be discarded . . . ." *Id.* at 494.  In response, Petitioner's attorney asked the witness:  "Doesn't it sound a little odd that – my understanding was that in order to conduct a search it has to be predicated by probable cause. You can't search and then say based on the results of the search I now have probable cause." *Id.* The State objected on grounds the question was argumentative, *id.*, and the trial judge stated:

> I think because this has become such an issue, I will instruct the jury.  I will put this in written form later.
>
> The jury is informed that under Oklahoma law any driver of any vehicle involved in an accident who could be cited for any traffic offense where said

_____

[5]"Oklahoma's formulation of the plain-error standard is virtually identical to the constitutional test for due process." *Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015).  So when the OCCA rejects a claim under the plain-error standard, the "decision constitute[s] an adjudication on the merits of the due process claim." *Id.*

accident resulted in the immediate death or great bodily injury as defined in subsection B of Section 646 of Title 21 of the Oklahoma Statutes, of any person shall submit to drug and alcohol testing as soon as practicable after such accident occurs.

The traffic offense violation shall constitute probable cause for purposes of Section 752 of this title, and the procedures found in Section 75 of this title shall be followed to determine the presence of alcohol or controlled dangerous substances within the driver's blood system.

I'll put that in written form later, but that is the law.

*Id.* at 494-95.

Petitioner claims the instruction was fundamentally prejudicial for two reasons. First, he argues the trial court's instruction had nothing to do with the State's objection involving argumentativeness. Doc. 1, Ex. 1, at 32. But Petitioner fails to explain how this prejudiced his trial, and certainly cannot show the OCCA unreasonably applied federal law in rejecting this argument.

Second, Petitioner alleges the jury instruction was misleading and confusing and would not have aided the jury "in their deliberation and findings of facts." *Id.* at 33. However, the trial court believed the jury was *already* confused and gave the instruction to clarify the law. More importantly, Petitioner's argument undercuts his request for habeas relief. That is, Petitioner is correct – the jury was *not* asked to decide if the officials had probable cause to draw Petitioner's blood. OR at 190-222 (Jury Instructions). Since the jury did not have to answer the question or apply the instruction, Petitioner cannot show the OCCA unreasonably applied federal law when it held, essentially, the instruction did not fatally infect the trial.

## 2.	Petitioner's Challenge to the Supplemental Instruction

Petitioner next challenges the trial court's supplemental instruction on the fourth element of driving a motor vehicle while under the combined influence of alcohol and intoxicating substances.  Doc. 1, Ex. 1, at 22-36.

The trial court gave the jurors the Oklahoma Uniform Jury Instruction (OUJI) relating to the misdemeanor crime of driving a motor vehicle while under the combined influence of alcohol and intoxicating substances.  OR at 212.  During deliberations, the jury sent a note asking:  "On Fourth element does it have to be both alcohol <u>and</u> intoxicants any combination of the two.  Is it an/or need clarification."  *Id.* at 226.  The trial court responded with a supplemental instruction, stating:

> You are instructed that the fourth element of the fourth element contained in Instruction number 22, in expanded form, is as follows:
>
> 1.  While having a blood or breath alcohol concentration, as defined in Section 756 of this title, of eight-hundredths (0.08) or more at the time of a test of such person's blood or breath administered within two (2) hours after the arrest of such person;
>
> 2.  While under the influence of alcohol;
>
> 3.  While under the influence of any intoxicating substance other than alcohol which may render such person incapable of safely driving or operating a motor vehicle; or
>
> 4.  While under the combined influence of alcohol and any other intoxicating substance which may render such a person incapable of safely driving or operating a motor vehicle.

*Id.* at 227.

Petitioner argues this instruction does not appear in the OUJIs and "contradicted what the jury had been instructed."  Doc. 1, Ex. 1, at 35.  The undersigned finds the OCCA reasonably rejected this claim on direct appeal.

First, whether the instruction appears in the OUJI is irrelevant in this Court. *See Parker v. Scott*, 394 F.3d 1302, 1319 (10th Cir. 2005) ("On habeas review, however, 'the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief.'" (citations omitted). Second, the OCCA held the statute accurately reflected Oklahoma law, and "'the state courts' interpretation of the state . . . statute is a matter of state law binding on this court.'" *Id.* (internal brackets and citation omitted). Indeed, while the supplemental instruction may have included elements irrelevant to Petitioner's specific charge, it clearly delineated the relevant element: "While under the combined influence of alcohol and any other intoxicating substance which may render such a person incapable of safely driving or operating a motor vehicle." *Supra* at 14. Under such circumstances, the undersigned finds the OCCA reasonably held the instruction did not render Petitioner's trial fundamentally unfair. *See Robison v. Ward*, 232 F. App'x 785, 789 (10th Cir. 2007) (finding petitioner had not met his burden of showing instructions "rendered his trial constitutionally unfair" where the "OCCA determined that the jury instructions . . . complied with state law").

## III. Ground Three – Petitioner's Claim the Trial Court Failed to Consult with Counsel Before Answering Jury Notes

In his third ground for relief, Petitioner alleges the trial court failed to consult with his attorney about the jury notes "in violation of [Petitioner's] right to counsel, right to due process, and in violation of [Okla. Stat. tit. 22, § 894] . . . ." Doc. 1, Ex. 1, at 39. On direct appeal, the OCCA "assum[ed] without deciding" the trial court had failed to follow the statutory procedures, but held "[Petitioner] was not prejudiced." Doc. 12, Ex. 3, at 4. The state appellate court noted:

> [Petitioner] does not complain of the trial court's appropriate answers to the jury's first three questions. He argues that Supplemental Instruction No. 1, given in response to the fourth question, allowed jurors to convict him without finding he committed every element of the crime. We rejected this argument in Proposition

II . . . .  As the instruction was not erroneous, [Petitioner] was not prejudiced by in violation of § 894.

*Id.*

## A.     Clearly established law

As discussed above, whether the trial court violated Oklahoma law does not concern this Court.  *See supra* at 7.  However, rooted in the Sixth Amendment and Due Process Clause, a criminal defendant has a constitutional right to have his attorney present during all "'critical' stages of the criminal proceedings."  *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (discussing the Sixth Amendment); *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (noting that when "the defendant is not actually confronting witnesses or evidence against him," the right to be present is "protected by the Due Process Clause"); *Rushen v. Spain*, 464 U.S. 114, 117 (1983) ("Our cases recognize that the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant.").  However, a violation of these rights is subject to harmless error analysis.  *See Rushen*, 464 U.S. at 119; *see also United States v. Washita Const. Co.*, 789 F.2d 809, 820 (10th Cir. 1986) ("In *Rushen* . . ., the Supreme Court stated that, while the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant, these rights are subject to the harmless error analysis.").

## B.     Analysis

The trial court answered four jury questions, and the undersigned assumes Petitioner's attorney was not present.[6]  In response to the first and third notes, the trial court informed the

---

[6]There is no record regarding whether Petitioner's attorney was consulted with or present during the trial court's responses to the jury, a point Petitioner argues in his fifth proposition.  *See infra* at 23.  For this review, the undersigned has assumed Petitioner's statement on the issue is correct.

jury he could not answer their questions. OR at 223, 225. For the second question, the trial court answered "Yes," the sentence decision must be unanimous. *Id.* at 224. Petitioner does not allege any illegality in those specific answers, and the undersigned therefore finds reasonable the OCCA's decision that any constitutional error was harmless. And because no fairminded jurist could disagree on that point, Petitioner fails to demonstrate actual prejudice under *Brecht*. *See supra* at 4-5; *see also United States v. Gomez,* 67 F.3d 1515, 1529 (10th Cir. 1995) (finding harmless the trial court's failure to consult with counsel before answering a jury question because: "[Petitioner] does not claim that the court's answer was factually inaccurate, he simply claims that he should have had input into the answer. We fail to see, however, what [petitioner] or his counsel could have added to the court's answer."); *see also, e.g., Tyler v. Arellano*, No. 08-cv-01368-CMA, 2011 WL 782494, at *12 (D. Colo. Feb. 28, 2011) (unpublished order) (denying habeas relief on petitioner's claim trial court answered jury questions without petitioner present because "the trial court's reminder to the jury to review the instructions was not prejudicial and was, in fact, harmless").

The same is true for the fourth note. Responding to the jury's question about whether the misdemeanor element required a combination of alcohol and intoxicants, the trial court gave the supplemental instruction outlined above. *See supra* at 14. But the Court presumes that instruction accurately reflected Oklahoma law, *see id.* at 15, and under such circumstances, the undersigned finds the OCCA reasonably held any constitutional error was harmless. Accordingly, trial court's conduct did not have a substantial and injurious effect on the jury's verdict. *See id.* at 4-5; *see also United States v. Carter*, 973 F.2d 1509, 1515 (10th Cir. 1992) (finding harmless the trial court's ex parte instruction to the jury where the instruction was accurate and reflected previous instructions); *see also, e.g., Smith v. Trammell*, No. CIV-09-293-

D, 2014 WL 4627225, at *37 (W.D. Okla. Sept. 16, 2014) (unpublished order) (denying habeas relief on petitioner's claim the trial court improperly reinstructed the jury without counsel present on grounds that the trial court's instruction was "legally correct").

## IV.  Ground Four – Petitioner's Allegation Involving Prosecutorial Misconduct

In his fourth proposition, Petitioner alleges the State committed prosecutorial misconduct. Doc. 1, Ex. 1, at 40-47.  In particular, Petitioner complains the State: (1) withheld favorable evidence; (2) sponsored "untested evidence"; (3) shifted the burden of proof; and (4) "sarcastically degrade[d] defense counsel and [Petitioner]." *Id.*

As addressed in detail below, the OCCA rejected the prosecutorial misconduct claim on the merits, Doc. 12, Ex. 3, at 4-6, and the undersigned finds this a reasonable application of Supreme Court law.

### A.  Clearly Established Law

It is clearly established that prosecutorial misconduct, if it occurs, can "create constitutional error in one of two ways." *Matthews v. Workman*, 577 F.3d 1175, 1186 (10th Cir. 2009).  "First, prosecutorial misconduct can prejudice 'a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right.'" *Id.* (*citing Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  When this occurs, a petitioner need not show that his entire trial was rendered fundamentally unfair. *See Dodd*, 753 F.3d at 990.

"Second, even if the prosecutor's improper remarks do not impact a specific constitutional right, they may still create reversible error if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Matthews*, 577 F.3d at 1186 (*citing Donnelly*, 416 U.S. at 643)).

**B.        Petitioner's Claim the Prosecutor Withheld Favorable Evidence**

Petitioner first complains the State withheld evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). "Under *Brady*, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Smith v. Cain*, 132 S. Ct. 627, 630 (2012). "'[E]vidence is 'material' within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" *Id.* (citation omitted).

Petitioner does not allege the State *withheld* evidence so much as he alleges the State *destroyed* evidence. That is, Petitioner complains the State did not provide Trooper Wright's field notes or a probable cause affidavit (recommending Mr. Williams be charged for standing in the road) because each had been destroyed before trial. Doc. 1, Ex. 1, at 30-31. Under this theory, Petitioner must prove the evidence "both possess[ed] an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467 U.S. 479, 489 (1984).

The OCCA rejected Petitioner's claim on direct appeal, holding:

> [T]he prosecutor did not commit a *Brady* violation; the record does not support any claim that prosecutors either had or failed to disclose any exculpatory or favorable evidence which is material to guilt or innocence or to punishment. Nothing in the record suggests that the documents at issue here contained any relevant evidence which defense counsel did not have.

Doc. 12, Ex. 3, at 4-5. The undersigned finds this to be a reasonable application of federal law.

Notably, Petitioner fails to explain how either document contained exculpatory evidence that, if disclosed, could have altered the trial's outcome. Further, Trooper Wright – the officer who took the relevant field notes and presented the relevant probable cause affidavit to the State

– testified at trial. Accordingly, Petitioner has not demonstrated he could not obtain the same evidence *through* Trooper Wright. *See, e.g., United States v. Watkins*, No. 97-3216, 1999 WL 609542, at *5 (10th Cir. July 28, 1999) (unpublished op.) (finding no *Trombetta* violation where relevant evidence was available through testifying witness). Under the circumstances, the undersigned finds Petitioner has not established a *Brady* or *Trombetta* violation and the OCCA's rejection of Petitioner's prosecutorial misconduct claim as it relates to this issue was reasonable.

### C. Petitioner's Claim the Prosecutor Sponsored "Untested Evidence"

Petitioner next alleges prosecutorial misconduct because the State "sponsored . . . untested evidence" and then argued the "evidence was proof beyond a reasonable doubt." Doc. 1, Ex. 1, at 43. Petitioner specifies "[n]o confirmatory test was done to prove beyond a reasonable doubt that [Petitioner] had cocaine and marijuana in his blood." *Id.* at 44.

The OCCA rejected this argument, holding: "[W]e found in Proposition I that the presumptive blood test results were admissible. The prosecutor did not act improperly in offering this evidence, or in arguing that jurors could consider the evidence in determining [Petitioner's] guilt beyond a reasonable doubt." Doc. 12, Ex. 3, at 5.

The OCCA's holding was a reasonable application of federal law. The blood test was properly admitted into evidence, *see supra* at 7-8; therefore, Petitioner cannot establish the State committed misconduct in introducing or relying on the evidence. *See, e.g., Howell v. Workman*, CIV-07-1008-D, 2011 WL 5143069, at *10 (W.D. Okla. Oct. 28, 2011) (unpublished order) (denying habeas relief on petitioner's claim prosecutor improperly relied on evidence because "this evidence was directly relevant . . . it was proper for admission and proper for comment by the prosecutor in opening statement").

**D. Petitioner's Claim the State Shifted the Burden of Proof**

The State asked Mr. Stillwell if Petitioner had requested further blood tests and the trial court sustained defense counsel's objection. TR Vol. IV at 633-34. In closing, the State told the jury: "This defendant had the opportunity to test his blood on his own. You heard the chemist say he had the opportunity to test the blood on his own. This defendant did not provide any results from any blood test from anybody else independently." TR Vol. V at 766. Petitioner alleges this was prosecutorial misconduct, as the State improperly shifted the burden of proof to Petitioner. Doc. 1, Ex. 1, at 44. The OCCA agreed, holding:

> This comment inferred that [Petitioner] could and should have [presented independent blood evidence]. The error is plain. However, the jury was properly instructed, and elsewhere both the prosecutor and defense counsel argued that the State had the burden of proof. We find that this isolated comment is harmless beyond a reasonable doubt, as it neither resulted in a miscarriage of justice nor constituted a substantial violation of a constitutional or statutory right.

Doc. 12, Ex. 3, at 5-6.

The State's burden-shifting comment arguably deprived Petitioner of a specific constitutional right. *See Dodd*, 753 F.3d at 990–91 (analyzing claim that State improperly characterized its burden of proof to determine if the misconduct "effectively deprived the defendant of a specific constitutional right"); *Morris v. Workman*, 382 F. App'x 693, 696 (10th Cir. 2010) ("'Where prosecutorial misconduct directly affects a specific constitutional right such as the presumption of innocence, a petitioner may obtain relief by demonstrating that the constitutional guarantee was so prejudiced that it effectively amounted to a denial of that right.'" (citation omitted)). Thus, the question is whether the OCCA unreasonably applied federal law when it held the error was harmless. The undersigned finds it did not.

As the OCCA noted, the trial court instructed the jury orally and in writing that the State had the burden of proof. TR Vol. II at 49; OR at 190. Such instructions are curative. *See, e.g.,*

*United States v. Farmer*, 770 F.3d 1363, 1370-71 (10th Cir. 2014) (holding trial court's instruction that government had the burden of proof cured any error in the prosecutor's comment defendant could have tested the evidence for fingerprints). Therefore, the undersigned finds the OCCA reasonably applied federal law when it held the error was harmless, and Petitioner therefore cannot show any "actual injury" under *Brecht. Supra* at 5.

### E.  The State's Alleged Sarcastic and Degrading Conduct

Finally, Petitioner alleges the State engaged in sarcastic conduct designed to degrade defense counsel and Petitioner. Doc. 1, Ex. 1, at 46. Specifically, the prosecutor allegedly "got up and clapped before giving his closing argument . . . ." *Id.* On direct appeal, the OCCA made a factual finding that the record did not support Petitioner's allegation. Doc. 12, Ex. 3, at 5. The OCCA held:

> The record does not support [Petitioner's] claim that the prosecutor improperly clapped after defense counsel's closing argument and before the State's final closing. The record shows that as the prosecutor's initial closing began, he clapped his hands to illustrate [Petitioner's] testimony about how suddenly the accident occurred. There was no impropriety in this, no error, and thus no plain error.

*Id.*

When the state appellate court makes a factual finding, the Court presumes that determination to be correct; a petitioner can only rebut this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Davis*, 135 S. Ct. at 2199-2000. Petitioner has not submitted clear and convincing evidence showing the OCCA incorrectly interpreted the facts at issue here. Accordingly, the undersigned finds the OCCA reasonably applied federal law in finding the prosecutor's demonstrative clap did not constitute prosecutorial misconduct.

## V.    Ground Five – Petitioner's Allegation Involving the Record

Petitioner argues he lacked a "full and complete record" on direct appeal because a September 8, 2011 hearing was not memorialized and the trial court created no record involving jury question answers.  Doc. 1, Ex. 1, at 47-48.  In a footnote, Petitioner alleges his trial attorney was ineffective for failing to insure the September 8, 2011 hearing was recorded.  *Id.* at 48, n.17.  The OCCA rejected the claims on direct appeal, holding:  (1) Petitioner had not identified "any particular issue argued in the September 8, 2011, hearing which was not subsequently preserved for review"; (2) the trial court's failure to follow the proper procedures in answering the jury questions was harmless; and (3) the trial court properly instructed the jury in answering its questions.  Doc. 12, Ex. 3, at 6.  Finally, the OCCA found Petitioner could not show any prejudice from his attorney's failure to ensure the September 8, 2011 hearing was transcribed.  *Id.* at 6-7.

### A.    Clearly Established Law Relating to Petitioner's Record

Under Oklahoma law, it was Petitioner's duty to ensure an adequate record.  *See Hill v. State*, 898 P.2d 155, 160 (Okla. Crim. App. 1995).  Petitioner does not cite, and the undersigned does not find, any Supreme Court law establishing he has an independent constitutional right to have every hearing and discussion preserved for appeal.  Deciding an almost identical issue, the Tenth Circuit recognized the relevant Supreme Court cases concern only whether a State must provide adequate records for indigents.  *See Heinemann v. Murphy*, 326 F. App'x 455, 462 (10th Cir. 2009).  Ultimately, the *Heinemann* court addressed the issue of missing transcripts under the Due Process Clause and relied on Supreme Court precedent that "[a] record of sufficient completeness . . . does not translate automatically into a complete verbatim transcript."  *Id.* (internal quotation marks omitted; *citing Mayer v. City of Chicago*, 404 U.S. 189, 194 (1971)).

## B. Clearly Established Law on Ineffective Assistance of Counsel

Under clearly established law, Petitioner must demonstrate his attorney's performance was deficient and prejudicial. *See Strickland*, 466 U.S. at 690-91. An attorney's performance is "deficient" if it falls "outside the wide range of professionally competent assistance." *Id.* at 690. "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the [direct appeal] would have been different." *Id.* at 694. Because the *Strickland* standard is so general, the Court's review under § 2254(d) is "'doubly deferential.'" *Hanson*, 797 F.3d at 826 (citation omitted).

## C. Analysis

The undersigned finds the OCCA reasonably found no fundamental unfairness in Petitioner's direct appeal record and no prejudice in trial counsel's conduct.

Petitioner filed a motion to compel discovery and a motion to suppress the (allegedly) illegally seized blood and the trial court heard the motions at the September 8, 2011 hearing. Doc. 1, Ex. 1, at 48; *see also* OR at 78-85 (motion to suppress). The trial court granted the motion to compel but denied the motion to suppress. Doc. 1, Ex. 1, at 42. Petitioner reurged the motion to suppress at trial, and the trial court again denied it. TR Vol. IV at 639-41. Importantly, Petitioner did not challenge the blood's seizure on direct appeal. Doc. 1, Ex. 1, *passim*. In that light, Petitioner does not explain what relevant information he believes was contained in the September 8, 2011 hearing that would have aided him on direct appeal, or how his direct appeal outcome would have been different if his attorney had ensured the hearing's transcription. Further, the OCCA held the trial court gave the jury legally appropriate responses to its questions and, even if the trial court did not consult with Petitioner's attorney, the error was

harmless. *See supra* at 15-18. Again, Petitioner fails to demonstrate how recorded transcripts could have altered the OCCA's decision on appeal.

For these reasons, the undersigned finds the OCCA reasonably rejected these claims on direct appeal. *See Heinemann*, 326 F. App'x at 462-64 (holding the state appellate court reasonably applied federal law in rejecting petitioner's claims that missing transcript sections rendered his trial fundamentally unfair and that trial counsel was ineffective for failing to insure transcription, in part because he "failed entirely to establish that the missing portions of the record had any impact on the [state court's] resolution of the issues that were actually presented on direct appeal").

## VI.  Ground Six – Petitioner's Claim His Sentence is Excessive

The jury fixed Petitioner's sentence at ten years' imprisonment, TR Vol. V at 789, and the trial judge entered the recommended punishment. OR at 251. According to Petitioner, this sentence is excessive. Doc. 1, Ex. 1, at 49-51. The OCCA rejected Petitioner's excessive sentence claim, holding "considering all the facts and circumstances, [Petitioner's] sentence is within the range of punishment and is not excessive." Doc. 12, Ex. 3, at 7.

### A.  Clearly Established Law

The Supreme Court has clearly established "the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *Ewing v. California*, 538 U.S. 11, 21 (2003) (citation omitted). However, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id.* (citation and internal brackets omitted). Indeed, the Court "afford[s] wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits

or unauthorized by law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000). Generally then, habeas review "ends once [the Court] determine[s] the sentence is within the limitation set by statute." *Id.*; *see also Britt v. Embry*, 302 F. App'x 774, 783 (10th Cir. 2008) (holding because sentence was within the statutory range, "habeas review of [the] sentence" was complete).

### B.     Analysis

Petitioner was convicted of first degree manslaughter. *See supra* at 1. In Oklahoma, his punishment range was "four years to life imprisonment." *State v. Haworth*, 283 P.3d 311, 313 (Okla. Crim. App. 2012). Since Petitioner's ten year sentence falls within the statute's limitation, the Court's habeas review is complete.

## VII.    Ground Seven – Petitioner's Allegation Involving an Accumulation of Errors

In his final argument, Petitioner claims the accumulation of errors deprived him of a fair trial. Doc. 1, Ex. 1, at 52-53. The OCCA rejected Petitioner's cumulative error claim on direct appeal, finding that any errors had been nonprejudicial and that the "trial was fairly conducted." Doc. 12, Ex. 3, at 7. The undersigned finds the OCCA's holding reasonable.

### A.     Clearly Established Law

The Tenth Circuit has recognized a circuit split regarding whether a cumulative error analysis is clearly established federal law, and acknowledged its own lack of published precedent. *See Cole v. Trammell*, 755 F.3d 1142, 1177 (10th Cir. 2014); *see also Eizember v. Trammell*, 803 F.3d 1129, 1148 n.8 (noting "the circuits are split on 'whether the need to conduct a cumulative-error analysis is clearly established federal law' for AEDPA purposes—and this court's position on the question is murky at best" (citation omitted)). However, the Court has recently held "when a habeas petitioner raises a cumulative error argument under due process

principles the argument is reviewable because 'Supreme Court authority clearly establishes the right to a fair trial and due process.'" *Hanson*, 797 F.3d at 852 n.16 (citation omitted).

With that backdrop, the Tenth Circuit has held: "'A cumulative-error analysis merely aggregates all the errors that individually have found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" *Id.* (citation omitted). In this analysis, the Court considers any constitutional errors along with the impact of any constitutional claims that "have been individually denied for insufficient prejudice." *Cargle v. Mullin*, 317 F.3d 1196, 1207 (10th Cir. 2003) (holding that because a claim involving "substantive prejudice components essentially duplicate the function of harmless-error review," "such claims should be included in the cumulative-error calculus if they have been individually denied for insufficient prejudice"). To qualify for federal habeas relief, Petitioner must show "the cumulative effect of the errors determined to be harmless had a 'substantial and injurious effect or influence in determining the jury's verdict [under *Brecht*].'" *See Hanson*, 797 F.3d at 852 (citation omitted). Again, the Court answers the *Brecht* question with deference to the OCCA's holding. *See id.*

### B.    Analysis

Petitioner's case includes three instances of either constitutionally harmless error or error with insufficient prejudice. Those involve: (1) the trial court's failure to consult Petitioner's attorney before answering jury questions; (2) prosecutorial misconduct in burden shifting; and (3) defense counsel's failure to have the September 8, 2011 hearing recorded. The OCCA held these isolated errors did not render Petitioner's trial fundamentally unfair, and Petitioner has not shown that fairminded jurists could disagree. Accordingly, the undersigned finds no evidence

these harmless errors – even aggregated – resulted in "actual prejudice" to Petitioner under *Brecht* and recommends the Court deny habeas relief on this issue.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Petition, Doc. 1, be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this report and recommendation by March 4, 2016, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This report and recommendation disposes of all matters referred by the District Judge and terminates the referral.

Entered this 12th day of February, 2016.


_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE